THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI

Ashlen Johnson

      Plaintiff,

  v.                                   Civil Action No.: 1:23cv282 TBM-RPM

Long Beach School District,

      Defendant.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Ashlen Johnson, by her undersigned counsel, files this complaint against the Long Beach School District ("the District"), and pleads as follows:

**INTRODUCTION**

1. This is a case about the Long Beach School District's unlawful disability-based employment discrimination against kindergarten teacher, Ashlen Johnson, in violation of Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"). Ashlen Johnson, who has been legally blind since birth, worked as a kindergarten teacher for the District at W.J. Quarles Elementary School ("Quarles Elementary") from August 2016 until January 2022. During this time, Ms. Johnson excelled as a teacher, receiving above average performance ratings, serving as the kindergarten team's team leader, and maintaining the trust of her students and their parents. Nonetheless, on January 4, 2022 – immediately following the holidays and less than three months after the District's Superintendent learned about Ms. Johnson's disability and the accommodations that she requested – the District fired her. The Long Beach School District fired Ms. Johnson because of her disability and the reasonable accommodations she needed. As a result of this unlawful discrimination, Ms. Johnson suffered financial and emotional injuries.

This lawsuit seeks redress for the injuries Ms. Johnson sustained as a result of Defendant's unlawful misconduct.

## JURISDICTION

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

## VENUE

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the unlawful conduct alleged in this Complaint occurred in this District.

## PARTIES

4. Plaintiff Ashlen Johnson resides in Gulfport, Harrison County, Mississippi. She may be served via her counsel of record in this matter. Ashlen Johnson is legally blind and is an otherwise qualified individual with a disability within the meaning of the ADA, 42 U.S.C. §§ 12111(8) and 12102. Ms. Johnson's disability substantially limits her major life activity of seeing. Ms. Johnson was employed as a kindergarten teacher for the District at Quarles Elementary from August 2016 until January 4, 2022, when she was wrongfully fired. Ms. Johnson was able to perform the essential functions of her job with or without reasonable accommodations.

5. Defendant Long Beach School District ("the District") is a school district in Mississippi with more than 15 employees. At all relevant times, the District employed over 350 employees. The District is a covered entity under 42 U.S.C. § 12111(2) of the ADA and at all relevant times has been engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 12111(5). The District may be served with process via its superintendent, Dr. Talia Lock.

## FACTUAL ALLEGATIONS

**I. Ms. Johnson is legally blind.**

6. Ms. Johnson is a 32-year-old with a disability. She has been legally blind her entire life. In 2004, at the age of 13, Ms. Johnson was formally diagnosed with a retina disease. In 2021, her diagnosis was revised, and her current diagnosis is Severe Early Childhood Onset Retinal Dystrophy, which limits her visual field to less than ten percent of that of someone with "normal" vision. As a result of her disability, Ms. Johnson has difficulty seeing in low-light settings and at far distances. She is unable to see at night. Ms. Johnson also has poor peripheral vision and depth perception and difficulty distinguishing between similar colors.

**II. Ms. Johnson's successful teaching career began in 2013.**

7. Ms. Johnson obtained her bachelor's degree in elementary education from The University of Southern Mississippi in May 2013. She also has a master's degree in early childhood education from the American College of Education, which she obtained in February 2021.

8. In 2013, Ms. Johnson began her teaching career at Anniston Avenue Elementary School ("Anniston Avenue") in Gulfport, Mississippi. Upon joining Anniston Avenue, she immediately informed the principal, Dr. Carol Payne, that she was legally blind and of the sight limitations associated with her disability.

9. Dr. Payne was accommodating of Ms. Johnson's disability.

10. Ms. Johnson excelled while at Anniston Avenue, where she received high performance ratings, served as the kindergarten team's team leader, and was trusted by her students and their parents.

**III.    Ms. Johnson becomes a kindergarten teacher for the District and excels in her job from August 2016 through July 2021.**

11.    In August 2016, Ms. Johnson joined the District's W.J. Quarles Elementary School ("Quarles Elementary") as a kindergarten teacher, upon the recommendation of Dr. Jan Hansen, the former assistant principal at Anniston Avenue and the principal at Quarles Elementary at the time.

12.    Because of their time together at Anniston Avenue, Dr. Hansen knew of Ms. Johnson's disability and the sight limitations associated with it.

13.    Dr. Hansen was accommodating of Ms. Johnson's disability, providing accommodations to Ms. Johnson, and never raising concerns about her disability or the accommodations she requested.

14.    Dr. Hansen, for example, had the lighting adjusted in Ms. Johnson's classroom, ensured that she had an assistant in her classroom when her assigned assistant was absent, and allowed her extra time to complete certain tasks.

15.    Ms. Johnson also received additional assistance with logging students into their computers for the biannual Mississippi Kindergarten Readiness Assessment ("MKAS") under Dr. Hansen's leadership.

16.    Quarles Elementary's next principal, Johanna Hughey, also knew and was accommodating of Ms. Johnson's disability.

17.    She, too, ensured that Ms. Johnson had assistance in her classroom when her assistant was absent and allowed Ms. Johnson to receive additional assistance with logging students into their computers for MKAS testing.

18.    Ms. Johnson excelled under Dr. Hansen's and Ms. Hughey's leadership, receiving above average performance ratings, serving as the kindergarten team's team leader,

serving as a mentor to Long Beach High School Teacher Academy students, being selected to host The University of Southern Mississippi elementary education practicum students, and maintaining the trust of her students and their parents.

19. During the five years Ms. Johnson worked under their leadership, neither principal – Dr. Hansen nor Ms. Hughey – raised any concerns, safety or otherwise, relating to Ms. Johnson's employment as a kindergarten teacher at Quarles Elementary.

IV. **Ms. Johnson's experience at Quarles Elementary and in the District changed in August 2021, when Kathryn Standish became the new principal at Quarles Elementary.**

20. Unfortunately, in August 2021, when Kathryn Standish replaced Ms. Hughey as principal at Quarles Elementary, Ms. Johnson's experience at the school and in the district changed.

21. Following a September 2021 visit to Ms. Johnson's classroom, Ms. Standish recommended that Ms. Johnson seek formal accommodations for her disability through the District.

22. On October 8, 2021, and at Ms. Standish's recommendation, Ms. Johnson met with Ms. Standish and Jessica Matheson, the District's Human Resources Director, to discuss accommodations for her disability. Ms. Johnson entered this meeting with the expectation of receiving formal approval of many of the accommodations she had already been granted informally by Dr. Hansen and Ms. Hughey.

23. During the October 8, 2021, meeting, and again in an October 11, 2021, email, Ms. Johnson requested accommodations related to her impaired vision and her need for assistance with her 26-student kindergarten class. Specifically, Ms. Johnson requested:

    a. Additional assistance with logging students into their computers for MKAS testing;

5

    b.    Assistance completing cumulative folders, which were folders containing students' personal and academic information and were in a font too small for Ms. Johnson to see;

    c.    Extra time completing certain tasks;

    d.    Adjustments to the dim bus hallway lighting, which she had to travel daily to access the cafeteria, meetings, school assemblies, as well as the playground;

    e.    The provision of a substitute teacher or other assistant in her classroom when her regular assigned teaching assistant was absent;[1]

    f.    An assistant in her classroom while her regular assigned teaching assistant administered Aimsweb testing (benchmark and monitoring tests for students in kindergarten through twelfth grade) outside of the classroom;

    g.    A computer with a larger screen for her classroom;

    h.    Continued use of her doorbell sensor;

    i.    That hallway lights be turned on when staff arrived in the morning;

    j.    Assistance with reviewing asset sheets, which were documents containing an inventory of items (e.g., computers, projector, smartboard, etc.) in each teacher's classroom and were in a font too small for Ms. Johnson to see; and

    k.    Maintenance and repairs to the sidewalks.

24.    Some of the accommodations Ms. Johnson requested were accommodations that were previously provided under Dr. Hansen's and/or Ms. Hughey's leadership, including allowing for extra time to complete certain tasks, the provision of a substitute teacher or other assistant when her regular assigned assistant was absent from work, assistance with logging her students in for MKAS testing, and the use of a doorbell sensor.

---

[1] It is important to note that all kindergarten teachers at Quarles Elementary were provided teacher's assistants to assist them with their daily job duties. Ms. Johnson's requests for accommodations regarding substitute assistants merely sought a substitute to stand in for the teacher's assistant when she was absent, and in those special situations where the regular teacher's assistant is not present in the classroom.

6

25. Some of Ms. Johnson's requested accommodations were provided under Ms. Standish's leadership as well, including a substitute teacher or other assistant if Ms. Johnson's regular teaching assistant was absent from work, allowing for extra time to complete certain tasks, providing additional assistance with logging students in for MKAS testing, and providing a replacement teacher's assistant in the classroom while Ms. Johnson's assigned assistant administered Aimsweb testing.

26. Three of Ms. Johnson's requested accommodations would have required the District to provide Ms. Johnson assistance for just a short period of time – i.e., cumulative folders were completed once, at the end of the school year; MKAS testing occurred only twice per school year; and Aimsweb testing occurred for only six cumulative weeks of the 36-week school year.

27. Ms. Johnson's request that the District provide a substitute teacher or assistant for her 26-student classroom when her regular assigned assistant was either absent or outside the classroom conducting Aimsweb testing aligned with Mississippi Kindergarten Guidelines, which provide that "[t]he teacher child ratio shall be 1:22 maximum" in kindergarten classrooms.

28. Shortly after the October 8 meeting, in an email to Dr. Talia Lock, the Superintendent of the District, Ms. Standish acknowledged that all the "accommodations that [Ms. Johnson] requested [were] reasonable."

29. In a second meeting on November 18, 2021, Ms. Johnson met with Dr. Lock, Ms. Standish, and Ms. Matheson to further discuss her requested accommodations. Ms. Johnson provided additional information regarding her disability and the basis for her requested accommodations.

30. Following this meeting, Ms. Johnson looked forward to continuing to work with Dr. Lock, Ms. Standish, and Ms. Matheson to determine accommodations to fit her needs.

**V.   Dr. Lock terminates Ms. Johnson's employment less than three months after learning of her disability and the accommodations she needed because of it.**

31. Despite Dr. Lock's indication that the District would continue to work with Ms. Johnson to accommodate her disabilities, there were no additional meetings or discussions held with Ms. Johnson following the November 18 meeting.

32. Ms. Johnson received no communication from Dr. Lock, Ms. Standish, or Ms. Matheson regarding her request for accommodations until almost seven weeks later, on January 4, 2022, when she received a letter from Dr. Lock terminating her employment and denying five of her eleven requests for accommodation.

33. Specifically, Dr. Lock denied Ms. Johnson's requests for:

   a. Assistance with completing cumulative folders;

   b. An additional proctor assigned to her classroom to help students log in for MKAS testing;

   c. An assistant in her classroom while her regular assigned assistant administered Aimsweb testing outside of the classroom;

   d. Another assistant to be assigned to her classroom when her regular assigned assistant was absent from work; and

   e. Adjustments to the bus hallway lighting.

34. Instead of permitting Ms. Johnson the opportunity to explain the reasonableness of her requested accommodations or discussing alternative accommodations, Dr. Lock determined that the five denied accommodations were "unreasonable."

35. In the January 4 letter, Dr. Lock further determined that Ms. Johnson – who had been successfully performing the essential functions of her job with similar accommodations

for five years and had received high performance reviews acknowledging her success – could not perform the essential functions of her job.

36. Dr. Lock did not identify any essential function Ms. Johnson was unable to perform with an accommodation such that her termination was warranted.

37. As evidenced by, among other things, Ms. Johnson's commendable performance, Ms. Standish's acknowledgment of the reasonableness of her requested accommodations, and the timing of her termination, the actual reason for Ms. Johnson's discharge was her disability and the reasonable accommodations she needed and requested formally at the request of Ms. Standish.

## CAUSES OF ACTION

## COUNT I

**(VIOLATION OF TITLE I OF THE ADA – WRONGFUL TERMINATION)**

38. Ms. Johnson re-alleges and incorporates herein all previously alleged paragraphs of the Complaint.

39. Title I of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to," among other things, the "discharge of employees." 42 U.S.C. § 12112(a).

40. Ms. Johnson is a qualified individual with a disability under the ADA, 42 U.S.C. § 12101 *et seq*., and its implementing regulations. Ms. Johnson was able to perform all of the essential functions of an elementary school teacher in the District with or without reasonable accommodations.

41. Ms. Johnson was both actually disabled and regarded as being disabled by Dr. Lock on the date Dr. Lock terminated her employment, January 4, 2022.

9

42. The District terminated Ms. Johnson's employment despite her five years of successfully serving as a kindergarten teacher at Quarles Elementary. Prior to Ms. Standish's and Dr. Lock's involvement with Ms. Johnson's reasonable accommodations requests, no one in the District had questioned or challenged Ms. Johnson's ability to perform the essential functions of her job.

43. The circumstances of Ms. Johnson's discharge, including (1) the District's termination of her employment less than three months after Ms. Johnson formally requested reasonable accommodations for her disability, (2) Ms. Standish's determination that Ms. Johnson's requested accommodations – some of which she had been provided previously – were reasonable, (3) no prior indication that the District believed Ms. Johnson was unable to perform the essential functions of her job with reasonable accommodations, and (4) Dr. Lock's January 4 letter indicating that Ms. Johnson was being terminated because of the limitations associated with her disability, demonstrate that Ms. Johnson was discharged because of her disability.

44. The explanation the District provided at the time of Ms. Johnson's discharge – an alleged inability to perform the essential functions of her job with reasonable accommodations – is not only false but pretextual.

45. By terminating Ms. Johnson's employment, the District discriminated against Ms. Johnson based on her disability.

46. As a large employer, the District was aware of its obligation not to engage in disability discrimination. In terminating Ms. Johnson's employment, the District recklessly disregarded that obligation.

47. This District's unlawful discrimination caused and continues to cause Ms. Johnson to suffer damages, including but not limited to lost wages and benefits and emotional distress.

48. On June 29, 2022, Ms. Johnson filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title I of the ADA by the District. The EEOC issued a Notice of Right to Sue on August 23, 2023. As a result, Ms. Johnson has exhausted all available administrative remedies prior to the filing of this Complaint.

## COUNT II

### (VIOLATION OF TITLE I OF THE ADA – FAILURE TO ACCOMMODATE)

49. Ms. Johnson re-alleges and incorporates herein all previously alleged paragraphs of the Complaint.

50. Title I of the ADA prohibits employers from failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A).

51. Ms. Johnson is a qualified individual with a disability under the ADA, 42 U.S.C. § 12101 *et seq.*, and its implementing regulations. Ms. Johnson was both actually disabled and regarded as being disabled by Dr. Lock on the date Dr. Lock denied five of her requested accommodations, January 4, 2022.

52. Ms. Johnson's disability and its consequential limitations were known by the District and Dr. Lock when she denied Ms. Johnson's requested accommodations.

53. Ms. Johnson's five denied accommodations included:

   a. Assistance with completing cumulative folders;

      b.      An additional proctor assigned to her classroom to help students log in for MKAS testing;

      c.      An assistant in her classroom while her assigned assistant administered Aimsweb testing outside of the classroom;

      d.      Another assistant to be assigned to her classroom when her assistant was absent from work; and

      e.      Adjustments to the bus hallway lighting.

54. All five requested accommodations were reasonable, as acknowledged by Ms. Standish and evidenced by the provision of most of the accommodations previously by principals at Quarles Elementary.

55. The District engaged in disability discrimination by failing to provide Ms. Johnson these five requested accommodations.

56. As a large employer, the District was aware of its obligation not to engage in disability discrimination. In failing to accommodate Ms. Johnson's disability, the District recklessly disregarded that obligation.

57. The District's unlawful discrimination caused and continues to cause Ms. Johnson to suffer damages, including but not limited to lost wages and benefits and emotional distress.

58. On June 29, 2022, Ms. Johnson filed a charge of employment discrimination with the EEOC alleging violations of Title I of the ADA by the District. The EEOC issued a Notice of Right to Sue on August 23, 2023. As a result, Ms. Johnson has exhausted all available administrative remedies prior to the filing of this Complaint.

## **DEMAND FOR RELIEF**

Plaintiff Ashlen Johnson respectfully requests that this Court:

(a) Enter a Declaratory Judgment stating that Defendant violated the Americans with Disabilities Act by terminating Ms. Johnson's employment on the basis of her disability;

(b) Enter a Declaratory Judgment stating that Defendant violated the Americans with Disabilities Act by failing to provide Ms. Johnson with reasonable accommodations;

(c) Award Ms. Johnson back pay from the date of her wrongful termination to the date that judgment is rendered in this action;

(d) Award Ms. Johnson compensatory and punitive damages;

(e) Award Ms. Johnson her reasonable attorneys' fees and costs, pursuant to 29 U.S.C. § 2617(a)(3) and 42 U.S.C. § 12205; and

(f) Award such other further relief as justice may require.

Dated: October 23, 2023                                    Respectfully submitted,

/s/ Macy D. Hanson
Macy D. Hanson (MSBN 104197)
The Law Office of Macy D. Hanson, PLLC
102 First Choice Drive
Madison, Mississippi 39110
Telephone: (601) 853-9521
Fax: (601) 853-9327
macy@macyhanson.com

Anisha S. Queen (*admission forthcoming*)
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 2500
Baltimore, Maryland  21202
Telephone:  (410) 962-1030
Facsimile:  (410) 385-0869
aqueen@browngold.com

*Attorneys for Plaintiff Ashlen Johnson*

## DEMAND FOR JURY TRIAL

Plaintiff Ashlen Johnson demands a trial by jury on all causes of action so triable.

/s/ Macy D. Hanson
Macy D. Hanson

Dated:  October 24, 2023